[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11510

Non-Argument Calendar

_____

BOBBIE LOPEZ,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:21-cv-00352-CLR

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Bobbie Delores Lopez appeals the district court's order affirming the Social Security Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). Lopez argues that the administrative law judge erred by finding her migraines were non-severe and, thus, the administrative law judge's decision is not supported by substantial evidence. Lopez argues that the error was not harmless because the administrative law judge failed to consider her migraine impairment in the residual functional capacity ("RFC") assessment and whether her migraine impairment medically equaled a listing in the Social Security Administration's ("SSA") Listing of Impairments. Finally, Lopez argues that the administrative law judge erred because the RFC finding was not supported by substantial evidence. For the following reasons, we affirm.

## I.

In March 2020, Lopez, a forty-four-year-old female, applied for a period of disability and DIB. She alleged disability based on migraines, post-traumatic stress disorder, major depression, herniated disc in neck, back pain, hip pain, irritable bowel syndrome, chronic lumbar strain, fibromyalgia, and sleep apnea. The SSA denied Lopez's application, both initially and upon reconsideration. Lopez requested a hearing before an administrative law judge, and the hearing was held in July 2021.

At this hearing, Lopez testified to the following. In 2005, she was a human resource specialist in the U.S. Army, which required her to do clerical work and supervise two or three people. She also served as a driver and a guard. In 2015, she worked for Dynamic Security as a security officer for about one year, which required her to stand "all day." In 2006, she worked at a warehouse, where she received and unloaded shipments, was required to stand the whole shift, and lifted boxes weighing between 20 and 50 pounds. She also worked as a guard at the Last Straw for more than six months, and the heaviest item she lifted at that job was about 20 pounds.

According to Lopez, she suffered from chronic migraines "at least three times a week." Typically, her migraines lasted "all day," but sometimes they persisted until the next day, with one lasting for "a week and a half." Her migraines felt like a "thumping" pain in her head. When she experienced a migraine, she had to avoid exposure to noises, sit in a dark room, and apply something cold to her head because she felt like she had a fever. She also kept a trashcan near her bed for when she vomited. To treat her migraines, she took amitriptyline and gave herself injections of sumatriptan. Lopez's migraines interfered with the use of her CPAP machine, which is used to treat sleep apnea.

Lopez was able to prepare meals and do light housework, but because her migraines caused her to miss work, she could not work at a desk job for forty hours per week. She was unaware of what triggered her migraines. And although her medications reduced her pain from the migraines, they did not stop it. Lopez

often would vomit shortly after taking her medication. And the migraines made it difficult for her to concentrate. Lopez testified that she stopped attending school after eighth grade, but she eventually earned her General Equivalency Degree. She then received a certificate in culinary arts from Virginia College.

A vocational expert ("VE") testified to what work a hypothetical individual with Lopez's history, impairments, and limitations could perform. He testified that a hypothetical individual who was Lopez's age, had Lopez's education and work experience, and could (1) lift and carry or push and pull 20 pounds occasionally or 10 pounds frequently; (2) sit, stand, and walk up to six hours in an eight-hour workday; (3) never climb ladders; (4) engage in other postural activity at times; (5) not be exposed to vibrations, unprotected heights, or dangerous machinery; (6) perform simple, routine, and repetitive tasks; (7) interact with coworkers and supervisors sometimes; (8) not be exposed to sustained interaction with the public; and (9) work in a stable environment where changes were introduced gradually, could not do any of Lopez's past relevant work. But the VE testified that there was work in the national economy that such an individual could do at the light-exertional level, e.g., work as a clerical title marker, small-products assembler, and housekeeping cleaner. The VE then testified that a hypothetical individual who could sit for six hours and stand or walk for two hours in an eight-hour workday, and could only lift 10 pounds occasionally, but had all the other non-exertional limitations of the first hypothetical person, could still work as an assembler/table-worker and document preparer. The VE then testified that if the

second hypothetical individual had the added limitation of missing two-to-three days per month due to their condition, they could perform no jobs in the national economy.

Lopez presented evidence from the state agency medical consultants who reviewed her medical records. These consultants determined, in relevant part, that she should avoid concentrated exposure to vibrations but that she had no environmental limitations because of noise. The consultants also determined that Lopez had moderate limitations in her ability to maintain attention and concentration for extended periods. But the consultant explained that this limitation related to her depression and that she had "sufficient attention/concentration for simple tasks."

Lopez also presented a third-party function report, in which Lopez's friend stated that Lopez had migraines "at least once a week," affecting her concentration, mood, and sleep patterns. This friend also stated that, in spite of her migraines, Lopez could prepare basic meals, do laundry, drive, pay bills, and maintain a checking account. She also presented her own function report, in which she stated that her migraines hindered her ability to cook and clean and that she lost a job because of her migraines. In another function report, Lopez reported having migraines about five days per week.

Lopez also presented her medical records, which showed the following. On February 1, 2019, Lopez had a consultation with a neurologist, Dr. Craig Woodward. Although he concluded that Lopez's neurologic examination and MRI brain scan were "within

normal limits," he reported that Lopez suffered from chronic headache syndrome and potentially suffered from post-traumatic migraines and muscle tension type headaches. Lopez's headaches began in 2003 after she suffered a closed head injury. Over time, they worsened in frequency and intensity, to where she experienced three or four headaches weekly. Her symptoms included nausea, vomiting, photophobia, phonophobia, dizziness, and blurred vision. She took Topamax and Fioricet in the past to no effect. Lopez was taking sumatriptan tablets and injections, but they were also ineffective. She also reported taking 25 milligrams of amitriptyline daily. Dr. Woodward discontinued the sumatriptan treatments but increased the dosage of amitriptyline from 25 to 50 milligrams. He also prescribed rizatriptan and tizanidine, explaining that alternative treatments would be explored if her condition did not improve. Finally, Dr. Woodward scheduled a follow-up consultation for Lopez with a neuropharmacologist, Alison Martin. Lopez had telehealth consultations with Dr. Martin in April, May, September, and October 2019.

Lopez's Veterans Administration ("VA") providers regularly refilled her amitriptyline prescription from October 2019 to February 2021. Additionally, after Dr. Martin restarted Lopez's sumatriptan prescription in September 2019, the VA regularly refilled that prescription through February 2021. Throughout this period, Lopez continued to report to VA providers that she suffered from migraines. In February 2020, she reported that she experienced frequent migraines, including one migraine that persisted for three days. In June 2020, she reported a painful migraine that required

her to sleep most of the day. In July 2020, she also reported a migraine. In October 2020, she reported that she had been suffering from migraines for six days. In January 2021, she again reported experiencing a migraine that lasted multiple days. That same month, she reported that her increased migraines were making it difficult for her to get out of bed. And at that time, her sensitivity to light required her to get a prescription for transition lenses, which darken when the light is bright. In February 2021, she reported that effects of her migraines were causing her to sleep during the day, making it more difficult for her to fall asleep at night. Then, in April 2021, she requested a new prescription for her migraines. That same month, Lopez's new VA primary care provider, a nurse practitioner, changed her diagnosis from "migraines" to "headaches."

In August 2021, the administrative law judge issued her decision, finding Lopez was not disabled and denying her application for a period of disability and DIB. At step one of the SSA's five-step evaluation process, the judge found that Lopez had not engaged in substantial gainful activity since July 11, 2019—her alleged onset date. At step two, the judge found that Lopez had three severe impairments: degenerative disc disease, obesity, and depression.

At step three, the administrative law judge found that none of Lopez's impairments, either standing alone or considered in combination, met, or medically equaled, a listing in the Listing of Impairments. As to Lopez's ability to maintain attention and concentration, the judge found that Lopez "routinely initiate[d] and

perform[ed] familiar tasks, completing them in a timely manner, throughout her daily living activities." The judge found that Lopez regularly prepared simple meals, washed dishes, cleaned, drove to stores, used the computer, and managed her own finances. Finally, after noting that the state agency consultants determined that Lopez had a moderate limitation in this area of work-related functioning, the judge found that, at the hearing, Lopez "provided timely and relevant testimony without showing signs of distraction, poor concentration, or need for a rest break." Accordingly, the ALJ found that Lopez had a moderate limitation in concentrating.

At step four, "[a]fter careful consideration of the entire record," the administrative law judge found that Lopez had the RFC to work at a light-exertional level, including the ability to: (1) lift, carry, push, or pull 20 pounds sometimes and 10 pounds often; (2) sit, stand, or walk 6 hours total in an 8-hour workday; (3) occasionally engage in other postural activities; (4) perform simple, routine, repetitive work tasks; (5) occasionally interact with coworkers and supervisors; and (6) work in a stable environment where major changes were introduced gradually. The judge, however, found that Lopez should not: (1) climb ladders; (2) be exposed to vibrations, unprotected heights, and dangerous machinery; or (3) maintain sustained interaction with the public. Immediately following the assessment of Lopez's RFC, the judge stated that, in making this finding, she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on

the requirements of 20 CFR 404.1529 and SSR 16-3p" and "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." The judge then concluded that Lopez's medical impairments could reasonably be expected to cause her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of the symptoms were not "fully supported for the reasons explained in this decision."

In discussing Lopez's RFC, the administrative law judge considered Lopez's migraines. After recounting Lopez's testimony about her migraines and the medical evidence, the judge found that the results of Lopez's neurological examination and MRI brain scan were "unremarkable." She also found that, although Lopez's description of her migraine symptoms, as reported to the neurologist, was consistent with her hearing testimony, Lopez's failure to seek follow-up treatment from a neurologist, after her initial consultations with Drs. Woodward and Martin, "seem[ed] unreasonable and lessen[ed] the plausibility of her testimony." The judge thus found that, after comparing Lopez's subjective testimony with the objective medical record evidence, the entire record failed to show that Lopez's migraines were severe and did not significantly limit her ability to work for a consecutive period of twelve months. The judge also supported her RFC assessment by considering the third-party function report prepared by Lopez's friend, which stated, in relevant part, that Lopez could prepare meals, do laundry, drive to stores, use the computer, manage her finances, and complete tasks. Although the judge acknowledged that Lopez's friend was not

medically trained or a disinterested third party, she found his description of Lopez's abilities to be consistent with the medical record evidence and, thus, somewhat persuasive. The judge also "fully considered" the relevant medical opinions and prior administrative medical findings. She found that the state agency medical consultants' determination that Lopez had the RFC to work at a light-exertional level was persuasive because it was consistent with the medical record evidence. And the administrative law judge concluded her step-four analysis by finding that, with her RFC, Lopez was "unable to perform any past relevant work."

As to step five, the administrative law judge relied on the VE's testimony to conclude that, although Lopez could not perform past relevant work, there were jobs existing in significant numbers in the national economy that Lopez could perform, including marker, small-products assembler, and housekeeping cleaner, all light-exertional and unskilled forms of work. The judge thus found that Lopez was not disabled within the meaning of the Social Security Act. The Appeals Council denied Lopez's request for review of the decision.

After exhausting her administrative remedies, Lopez filed an action in the district court for review of the administrative law judge's decision denying her eligibility for disability benefits. Lopez argued that the Commissioner erred by finding her migraines non-severe and that substantial evidence did not support the administrative law judge's RFC finding.

The district court subsequently affirmed the Commissioner's decision to deny the period of disability and DIB. Lopez then timely appealed.

## II.

Where, as here, an administrative law judge denies benefits and the Appeals Council denies review, we review the administrative law judge's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). A decision is supported by substantial evidence if the administrative record contains evidence that "a reasonable person would accept as adequate" to support the agency's factual conclusions—even if it may be outweighed by other evidence. *Id.* at 1158–59 (quoting *Lewis*, 125 F.3d at 1439). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration adopted) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

## III.

The social security regulations outline a five-step process the administrative law judge must use to determine whether a claimant is disabled: (1) whether she is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment or

combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether she can perform her past relevant work given her RFC; and (5) if not, whether, based on her age, education, and work experience, she can perform other work found in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4).

At step two, the administrative law judge considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the administrative law judge determines that the claimant does not have a severe impairment, or a combination of impairments, the regulations direct the administrative law judge to find that the claimant is not disabled. *Id.* We have described step two as a "filter" requiring the denial of any disability claim where no severe impairment, or combination of impairments, is present. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Accordingly, any finding of a severe impairment is enough to satisfy step two and proceed to step three, and any failure to find other alleged impairments severe is harmless. *See id.*; *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error review in the social security context).

In *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), we addressed a claimant's challenge to an administrative law judge's finding, at step two of the sequential analysis, that the claimant lacked a severe impairment. *Id.* at 915. After determining that the medical evidence did not support the administrative law judge's

conclusion, we remanded for the judge to progress to the next step in the sequential analysis. *Id.* at 921.

Here, because the administrative law judge determined that Lopez had severe impairments of degenerative disc disease, obesity, and depression, and continued in the sequential analysis, any alleged error in finding that her migraines were non-severe would be harmless if the administrative law judge considered Lopez's migraines at steps three through five. *See Jamison*, 814 F.2d at 858. Unlike *Brady*, the administrative law judge did not end her analysis at step two nor deny Lopez's applications based on the finding that she lacked severe impairments. *See* 724 F.2d at 921. Instead, the judge applied the correct legal standard by considering all of Lopez's impairments at step three and in assessing her RFC. *Winschel*, 631 F.3d at 1178; 20 C.F.R. § 404.1545(a)(2). The record shows that, at step three, the judge explicitly considered the impact that Lopez's migraines had on her ability to maintain attention and concentration, as well as "all symptoms" in light of the evidence, which included Lopez's migraines. The record further shows that the judge properly weighed Lopez's hearing testimony against the other relevant evidence, including her medical records and function reports, in determining how significantly her impairments limited her ability to work.

Accordingly, we affirm as to this issue.[1]

---

[1] Relatedly, Lopez appears to argue, for the first time on appeal, that the administrative judge erred by failing to consider whether her migraine impairment medically equaled a listing in the Listing of Impairments at step three,

14                    Opinion of the Court                    23-11510

## IV.

At step four, the administrative law judge must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is an assessment of a claimant's ability to work despite impairments. *Id.* § 404.1545(a)(1). In formulating an RFC, the administrative law judge examines all relevant medical and other evidence, including statements provided by medical sources and descriptions and observations of the limitations. *Id.* § 404.1545(a)(3). Consideration of all impairments—severe and non-severe—is required when assessing a claimant's RFC. *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984).

In *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), the administrative law judge stated that he had "considered all symptoms" when assessing the claimant's RFC. *Id.* at 1269. But the content of his decision only mentioned that the claimant had bipolar disorder; it did not discuss how that disorder affected the RFC, and the administrative law judge's findings only concerned physical capacities. *Id.* We held that, even if the administrative law judge had considered the mental conditions implicitly, he had failed to provide sufficient reasoning to show that he had done so. *Id.* As a result, the administrative law judge's decision was not supported by substantial evidence. *See id.* at 1270.

_____

such as epilepsy. But in a social security appeal, we generally do not address arguments not made in the district court. *See Crawford*, 363 F.3d at 1161. We thus decline to consider this argument. But we again note that the administrative law judge *did* consider her migraine impairment at step three.

23-11510　　　　　　Opinion of the Court　　　　　　　15

Here, substantial evidence supported the administrative law judge's RFC finding. *See Bowen*, 748 F.2d at 634-35; *see also* 20 C.F.R. § 404.1545(a)(3). Unlike in *Schink*, the administrative law judge here considered Lopez's migraines at length. The judge discussed her hearing testimony, the treatment she received, the "unremarkable" results of her neurological exam and MRI brain scan, findings by state agency consultants, the VE's testimony, and a third-party function report. This provided sufficient reasoning to demonstrate that the administrative law judge's decision was supported by substantial evidence. Thus, we affirm as to this issue.

★ ★ ★ ★

For the foregoing reasons, we affirm.

**AFFIRMED.**